IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| v. | : | |
| HARRY BERROA | : | NO. 07-243-01 |

**MEMORANDUM**

**I.   Introduction**                                                                                                 December 13, 2007

Defendant, Harry Berroa, ("Defendant") moves for a new trial pursuant to Rule 33 and for a judgment of acquittal, pursuant to Rule 29, FED. R. CRIM. P. (Doc. No. 76). On September 20, 2007, Defendant was found guilty of interference with interstate commerce by robbery and aiding and abetting, in violation of 18 U.S.C. §§ 1951(a) and 2 (the Hobbs Act); and using and carrying a firearm during a crime of violence in violation of 18 U.S.C. 924(c)(1). After the jury had been dismissed, Defendant's counsel, Benjamin Cooper and Catherine Henry, ("Defense Counsel") asked the Court to reconvene in an emergency hearing because it had come to Defense Counsel's attention that the jury had asked the Court for a dictionary during their deliberations, and the Court had complied with the request without first consulting with counsel.

Mr. Berroa moved for a new trial on the grounds that (1) the jury was likely prejudiced by its exposure to the dictionary; and (2) his right to counsel and right to be present at all stages of his trial were violated by the Court's communication with the jury outside his presence and without consultation with his counsel. Defense Counsel also moved for a judgment of acquittal, based on counsel's claim that the interstate commerce element of the Government's case was not

adequately proven at trial.[1]  The Court has previously entered an order granting Defendant's Motion for a New Trial and denying Defendant's Motion for Judgment of Acquittal.

## II.     Background

Defendant was charged in a three-count indictment with conspiracy to interfere with interstate commerce, in violation of 18 U.S.C. § 1951(a) (the Hobbs Act); interference with interstate commerce by robbery and aiding and abetting, also in violation of 18 U.S.C. §§ 1951(a) and 2; and using and carrying a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1).  His trial began before this Court on September 17, 2007.[2]  The jury deliberated for approximately half a day.  On September 20, 2007, the jury found the Defendant not guilty on count one and guilty on counts two and three.

During deliberations, the jury sent a note to the Court asking, "if we find this is not a case for Federal Court, (not interstate commerce interference) does the case get dropped completely or does it go back to be tried in local court?"  The Court called Defense Counsel and the Government into the courtroom to determine how to answer the jury's question.  After consulting with counsel, the Court determined an appropriate answer and the jury continued its deliberations.

---

[1] Defense Counsel argued for a judgment of acquittal under Federal Rule of Criminal Procedure 29, pursuant to the claim that the element of interstate commerce had not been proven during the trial.  The motion was renewed in Defendant's brief, (Doc. No. 76) but the argument in the brief focused on a motion for a new trial under Federal Rule of Criminal Procedure 33, based on the jury's exposure to the dictionary.  The Court rejects the Rule 29 Motion for judgment for acquittal because there was substantial testimony at trial of the interstate commerce aspects of the business of the of the robbery victim, from which the jury could conclude the requisite minimal impact on interstate commerce was satisfied.

[2] This was Defendant's second trial.  The jury at the first trial was unable to reach a unanimous verdict.

Later in the deliberations, the jury made a request for a dictionary. Without first consulting or informing Defense Counsel or the Government, the Court provided the jury with a copy of Merriam Webster's Collegiate Dictionary, (10th ed. 2001).

After the jury had returned their verdict, the Court told Defense Counsel and the Government that they might meet with jurors informally, off the record. At this time, Juror No. 1 informed the attorneys that the jury had consulted a dictionary during deliberations. (Def.'s Mot. for J. of Acquittal and New Trial, at 2). After the jury had been dismissed, Defense Counsel asked that all parties return for an emergency hearing so that Defense Counsel might be heard on the record. At the hearing, Defense Counsel asserted that the Court had acted improperly by allowing the jury to look at a dictionary.

On October 1, 2007, Defense Counsel filed a written Motion for Judgment of Acquittal and New Trial. (Doc. No. 76). The Government filed it's Response in Opposition to the Motion of October 17, 2007, (Doc. No. 77) and Defense Counsel filed their Reply to the Government's Response on November 1, 2007. (Doc. No. 79).

In a letter to counsel, dated October 11, 2007, the Court stated that it was seriously considering granting a new trial and asked counsel to submit a brief on the issue of whether providing the jury with a dictionary was prejudicial per se or whether the Court needed to conduct an inquiry as to prejudice.

The Government and Defense Counsel disagree as to which words the jurors told them they had looked up in the dictionary and how the definitions may have impacted the jury's verdict. Defense Counsel claims that Juror No.1 told them that the jury had consulted the dictionary for definitions of "interstate," "commerce," "affect," and "effect," and "perhaps other

3

words as well" and that the juror explained that the definitions "cleared everything up," making it possible for the jury to arrive at their verdict. (Def.'s Mot., supra, at 2).

The Government contends that Juror No. 1 told counsel that the jury initially voted to convict Defendant on all three counts, but that a question arose regarding the language in the verdict form for the first count and that the jury used a dictionary to look up definitions of "affect" and "effect." After the jury looked up these words, they found Mr. Berroa guilty only as to counts (2) and (3). It is the government's position that the dictionary most likely helped Defendant because in all likelihood, he would have been found guilty of all three counts, but for the dictionary definitions of "affect" and "effect." (Gov's Resp. at 2-3). The government asks that the Court conduct an evidentiary hearing to determine precisely what the jury saw and considered. However, it is the Government's position that even if no hearing is held, there is insufficient evidence for the Court to find that Defendant suffered substantial prejudice and that, therefore, Defendant's conviction should stand.

### III.   Legal Standards

Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. FED. R. CRIM. P. 33; United States v. Higgs, 504 F.3d 456, 463 (2007).

A defendant's constitutional right to be present at every stage of his criminal proceeding is grounded in the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment. United States v. Gagnon, 470 U.S. 522, 526 (1985). The right is also guaranteed by Federal Rule of Criminal Procedure 43(a), which mandates that a defendant shall be present "at every trial stage."

Errors that violate a defendant's constitutional rights require the Government to prove harmlessness "beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Put another way, there must be "no reasonable possibility of prejudice for an error to be deemed harmless." United States v. Tolliver, 330 F.3d 607, 613 (2003).

A motion for judgment of acquittal obliges a district court to review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt based on the available evidence. United States v. Wolfe, 245 F.3d 257, 267 (3d Cir. 2001).

**IV.    Discussion**

    **A.    Harmless Error Analysis**

        i.    An Error Was Made

The Court erred in giving the jury a dictionary during deliberation without first consulting counsel. When a jury asks the Court a question, the Court must convene both parties and discuss how the jury's question should be answered. The Supreme Court has held that a jury's message should be answered in open court and that defense counsel should be given an opportunity to be heard before the trial judge responds. Rogers v. United States, 422 U.S. 35, 39 (1975). The Court erred under Federal Rule of Criminal Procedure 43, which states that a defendant has a right to be present at all stages of a trial, but more importantly, the Court's error implicates Defendant's Fifth Amendment right to due process and his Sixth Amendment right to be present at all stages of his trial. A defendant's right to be present at all stages of the criminal process is "one of the most basic rights guaranteed by the Confrontation Clause." United States v. Faulks, 201 F.3d 208, 211 (2000) (quoting Illinois v. Allen, 397 U.S. 337, 338 (1970).

        ii.        The Standard By Which Prejudice Should be Assessed

Once it has been determined that the Court has erred, the analysis turns to whether the error prejudiced the defendant. The Third Circuit has held that where a defendant's Fifth Amendment Right to Due Process and Sixth Amendment right to be present at all stages of his trial has been compromised, it is the government's burden to prove beyond a reasonable doubt that the defendant has not been injured by the error. United States v. Tolliver, 330 F.3d 607, 613 (3d Cir. 2003). In Tolliver, the trial court gave a transcript of the critical moments of testimony to the jury, upon the jury's request, without first consulting counsel, which the Third Circuit found to be an error implicating the defendant's Constitutional rights. The infringement on Defendant's rights in the instant case mirrors those in Tolliver, because both errors implicate the defendant's Fifth and Sixth Amendment Rights, and thus the same harmless error analysis must be applied here.

        iii.        Assessing Whether Jury Was Prejudiced

The concept of interstate commerce most likely played an important role in the jury's deliberations and therefore Defendant's claim that the dictionary's definition of "interstate" and "commerce" prejudiced him cannot be lightly dismissed. Defense Counsel discussed interstate commerce at length in her closing argument and repeatedly questioned whether the Government had met its burden of proving that Defendant's actions had affected commerce. The jury's first note asking about interstate commerce also indicates that the jury was struggling with the issue of whether or not the Government had met its burden of proving that Defendant had robbed a business involved in interstate commerce. As the dictionary may have been used to look up the words "interstate" and "commerce," the Court cannot ignore the risk that the jury's knowledge of

6

the dictionary's definition of these words may have influenced their verdict.

The Government argues that even if the jury did look up the words "interstate" and "commerce" in the dictionary, those words were defined more narrowly in Merriam-Webster's Dictionary than they were in the jury charge and that therefore any definition they might have gleaned from the dictionary could only have aided Defendant. While the Court acknowledges that the Government may be correct, it is impossible to know how the definitions in the dictionary may have influenced the jury's deliberations. Speculation is useless. Given that the Government must prove beyond a reasonable doubt that Defendant was not prejudiced by the dictionary, the Government has not met its burden.

B.     The Court Rejects Recalling the Jury for an Evidentiary Hearing

The Government suggests that in order to determine whether the dictionary prejudiced Defendant, the Court should hold an evidentiary hearing at which the jury would be reconvened and questioned about their use of the dictionary. The Court rejects this idea. The Third Circuit has held that jurors who complete their service should rarely, if ever, be recalled for further proceedings: "We are always reluctant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences. As we have said before, post-verdict inquiries may lead to evil consequences: subjecting jurors to harassment, inhibiting jury room deliberation...and creating uncertainty in jury verdicts." United States v. Gilsenan, 949 F.2d 90, 97 (3d Cir. 1991) (finding no abuse of discretion where trial court did not hold a post-verdict evidentiary hearing where the jury would have been recalled to determine the degree to which they had been prejudiced against the defendant by news they had heard about plea negotiations during the trial) (citations omitted).

Furthermore, questioning the jury would be unlikely to yield fruitful information because Federal Rule of Evidence 606(b) bars the Court from asking questions about the substantive effect that the dictionary may have had on the jury's decision-making.  The rule states: "Upon an inquiry into the validity of a verdict...a juror may not testify as to any matter of statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict...or concerning the juror's mental processes in connection therewith."  A juror may testify about: (1) whether extraneous prejudicial information was improperly brought to the jury's attention (2) whether any outside influence was improperly brought to bear upon any juror or (3) whether there was a mistake in entering the verdict onto the verdict form.  FED. R. EVID. 606(b).

If the Court recalled the jury, it could not ask the jury any questions about how the dictionary definitions impacted their decision-making process, but could only ask what words the jurors had looked up and then conduct "an objective analysis by considering the probable effect of the allegedly prejudicial information on a hypothetical juror." U.S. v. Lloyd, 269 F.3d 228, 238 (3d Cir. 2001).  Given the limited scope of the questions permitted and the Third Circuit's aversion to post-trial jury inquiries, this Court will not recall the jury for a hearing.

There is one other reason the Court cites for granting a new trial. The co-defendant, Jesse Dawson, was until recently, a fugitive.  There is substantial testimony that Dawson was involved in the crime charged and that his culpability may be equal to or greater than Berroa's.  Because Dawson has now been apprehended, the Court believes that a joint trial of Berroa and Dawson will be both appropriate and fair to both the Government and Defendants.

BY THE COURT:

s/Michael M. Baylson

_____
Michael M. Baylson, U.S.D.J

O:\Criminal Cases\07-243, Berroa, US v\memorandum opinion granting new trial 12-2-07.wpd